We'll hear counsel in the next case, U.S.A. v. Noramie Jasmin. Ms. Hannigan, you arrived a bit late, so we didn't have you down for saving any time for rebuttal. Are you reserving any time? I'll save a couple of minutes, Your Honor, and my sincere apologies for being late for calendar call. I've never missed a calendar call before. I apologize. It's all right. We'll move on. Two minutes, then. Okay. Good morning, Your Honors. May it please the Court, my name is Jillian Harrington, and I represent Ms. Noramie Jasmin on this direct appeal. I did not represent Ms. Jasmin in the district court below trial. As the Court is, of course, well aware, we raised three issues for review by this Court. The first issue is whether or not the district court erred in permitting the government to change the evidence upon which it was relying for the mail fraud count. The indictment. Well, you say change the evidence to rely upon a different mailing than the one that they had originally planned to rely on. So they're not changing, yeah. But so it's, but both mailings were in the, were before the jury, right? Yes. Both mailings were, and both mailings were a plausible and possible basis for a mail fraud count. Well, the issue and the government's argument has consistently been, and the district court agreed with their argument, was that the October 25th mailing, which was not included in the indictment, was turned over as part of the pretrial discovery, well in advance of the trial. There's never been a dispute about that. The issue is whether an indictment can list one thing and then turn over a letter in voluminous pretrial discovery and say, well, we're going to shift gears now and we're going to rely on that letter. Other than the fact that it involved wire fraud rather than mail fraud, how is Dupre distinguishable from this case? Well, I conceded, as I felt I needed to, in our appellant's brief, that Dupre is a very difficult obstacle for Ms. Jasmine to overcome. So you're asking us to overturn Dupre? What I'm asking you to do, well, in a sense, yes, or at least limit it to the extent that in this case we have a mail fraud. The crime is the mailing. And the problem with that is that this mailing was not the mailing that was included in the indictment. So you're asking a defendant to prepare for trial, to present a defense to a jury, or in this case it was a bench trial, with a lack of information. He didn't even realize that this was an issue until after the trial was over during summation. In fact, during their request to charge, the government even mentioned the fact that they were, that the court needed to find that the mailing included in the indictment, which was the November mailing, is what the judge needed to find had been made, the mailing had been made in furtherance of the alleged scheme to Dupre. So what we're doing here is we're asking a defendant to prepare a defense, present a defense, question witnesses, give an opening statement, give us a summation. Was there a bill of particulars during discovery here? I'm sorry? Was there a bill of particulars requested during discovery where the defense would ask the question of what is it that the government is relying upon for various things? I don't know. There's nothing in the record on that. Right, I apologize. I don't know the exact answer to that question. I do know, as I said, that it was turned over during the discovery, and it was marked as an exhibit. But a lot of things are marked as an exhibit, and quite often those things sometimes don't even go into evidence. Things that are marked as an exhibit, documents that are turned over, the government is often very good in... Well, also, in some cases, I'm not saying necessarily in this case, there's sort of a document dump that occurs. And then that would require a defense counsel to kind of sift through everything to find out what, you know, to try and anticipate problems that might come up. So that's what the purpose of the bill of particulars is for, is to try and nail down, for the defense to nail down what the government is actually relying on. And the particulars that, you know, it takes the indictment down to a little more granular level. But with all due respect to your honor and to the government, I agree with your honor. But isn't that also what the indictment is for? The purpose of the indictment is to alert a defendant as to what he or, in this case, she is defending against. What the government, what the people of this country are saying that he or she did wrong in the commission of some act. And if we, if the government is going to be so specific... Indictments don't have to be that specific. But they were. I know. So you're saying it's not a question of nondisclosure of anything. It's a misleading. Absolutely. And I think that that's exactly a word that I had jotted down during my preparation is that this is, I think, a dangerous, slippery slope that we're giving the government an opening to say, you know, right now in the pretrial and the grand jury stage, we think this is what you did wrong. But, you know, it leaves the door open to the government so that if they find additional evidence or they go through, while they're going through their evidence, they say, hey, we could have used this one. It really leads us down a very slippery slope to get the prosecutors really wide open, you know, a wide open... What would you have done differently? I'm sorry? What would counsel have done differently? Well, in his letter that was submitted in the middle of summations when this issue came up, defense attorney realized, oh, my, you know, what is going on here? The government is shifting. Letters were submitted, and he said that there were some things that he would have done differently, perhaps calling the cooperating witness, who the government did not call, Mr. Stern, perhaps putting his client on the stand, perhaps, and most importantly, attacking this... You really think that calling the cooperating witness would have... ...might have changed things as between an October 25 mailing and a November 28 mail? Well, what defense counsel said was that that would have opened the door in his mind to him doing that. Also, he just would have mounted a more vigorous attack on the October 25 letter. He let it in without objection, which there probably wouldn't have been a sustained objection anyway. He said that he could have spoken with secretaries who worked in the office. He didn't do that. And I'd like to also point out to the court that his failure to do all of these things I did raise as point three here, which was the ineffective assistance of counsel for his failure to do all of these things. But to bring it back to the real issue is the fact that the defendant wasn't alerted to what the government was doing here. By just putting it in the middle of all of their discovery, it's really fundamentally unfair to a defendant to tell them one thing and then make an about face and do another. If your honors have no further questions on this issue, I'll reserve my time. Thank you very much. We'll hear from Ms. Feinstein. Good morning. May it please the court. My name is Jessica Feinstein. I'm representing the government on appeal. I also represented the government at trial. I just wanted to answer first your question about the bill of particulars. There was no bill of particulars here. Your honor, the issue of the October 25th mailing, that's the mailing that was not in the indictment, is really squarely foreclosed by Dupree, this court's decision in Dupree. And in fact, the facts presented here are stronger than those in Dupree. And that is because in Dupree, the government, that was a wire fraud case, not a mail fraud case, but the government did not prove the wiring in the mail in the indictment at all. But here, we proved both the mail, the November 28th mail that was in the indictment, as well as the October 25th mailing. You know, it's really, I would say, analogous, the facts here are analogous to a situation where the government, say, charged somebody with a conspiracy count and alleged in the indictment an overt act. And then during the course of the trial, there are any number of other overt acts that are also proven. The government isn't prevented from arguing to the jury that those other overt acts, and here it was a bench trial, but they aren't prevented from arguing that those other overt acts. Well, if you had looked at a little bit of a different situation, if you hadn't marked the exhibit, if you hadn't provided information about it, and then in the middle of the trial decided, oh, this might be a mailing, that would be a problem, correct? Your Honor, in theory, it could be a problem, yes. So there are significant limitations. Here, you're protected, your argument is, by the fact that you turned over the October 25th documents or related documents well before and you marked them as an exhibit before trial. That's right, and just to be clear, this was not a case where there was voluminous documentary evidence in any way, shape, or form. If my memory served me, there were at most three letters that were marked as exhibits, and these were two of them. And these were the only two that were introduced at trial. So to suggest that a defense counsel was somehow surprised by the October 25th mailing is just not correct. The argument that what would a defense counsel have done differently, and Judge McMahon pointed this out, the idea that defense counsel should have called the cooperating witness, Mark Stern, and somehow thereby been able to cast into doubt whether the October 25th mailing was in furtherance of the conspiracy, it doesn't make sense. A cooperating witness had nothing to do with the village attorney. His meetings with Ms. Jasmine were all in secret and separate and apart from the time at which this mailing occurred. So that argument just does not make sense here. And again, Judge McMahon found that the government proved both mailings in a special verdict. So there was ample evidence to support the November 28th mailing as well. And the scheme was not complete at the time that the vote occurred on October 23rd, and then the mailing happened thereafter. The scheme was still not complete because the scheme required the defendant to actually be able to profit. And that required that the development agreement be entered into between the village and the contractor, Raj, who was the undercover agent. So it's absolutely in furtherance of the scheme that the development agreement should be sent by the village to the individual who was the undercover agent. If your honors have no further questions on any of these issues, we'll rest on our papers. Thank you. Just very briefly, your honor, as the government noted, the district court did find that both the October and the November mailings could have supported the mail fraud charge. But just briefly about the November mailing, as we argued in our brief in much greater detail, the mailing of this document made no sense. Mr. Stern had obviously had this document months before. He had given it to his attorney to be marked up. Mr. Conway, who testified about the mailing, said that he didn't recall if Raj, who was actually the undercover agent, had asked for it or why it was asked for. And it's from the outside looking in at the cold record, as an appellate attorney must do, it appears that it was done for the purpose of getting jurisdiction in this case. There's really no other reason why this mailing would have been made. If your honors have no further questions, we will rest on our brief.